1

2

3

4                                  UNITED STATES DISTRICT COURT

5                               NORTHERN DISTRICT OF CALIFORNIA

6

7    PATRICIA A DENNIS,                            Case No. 20-cv-04360-HSG

                    Plaintiff,
8
                                                   **ORDER DENYING PLAINTIFF'S**
9            v.                                    **MOTION FOR SUMMARY**
                                                   **JUDGMENT AND GRANTING**
10   ANDREW SAUL,                                  **DEFENDANT'S MOTION FOR**
                                                   **SUMMARY JUDGMENT**
                    Defendant.
11                                                 Re: Dkt. Nos. 23, 27

12

13           Defendant Andrew Saul,[1] the former Commissioner of the Social Security Administration

14   ("SSA"), acting in his official capacity, denied Plaintiff Patricia L. Dennis' application for

15   Supplemental Security Income ("SSI") under Title II of the Social Security Act.  Dkt. No. 1.

16   Plaintiff seeks judicial review of that decision.  For the reasons detailed below, the Court **DENIES**

17   Plaintiff's motion for summary judgment, and **GRANTS** Defendant's motion for summary

18   judgment.

19   I.      BACKGROUND

20           In June 2017, Plaintiff filed an application for SSI, alleging a disability onset date of

21   October 1, 2014.  *See* Dkt. No. 17 ("AR") at 226.[2]  In her application, Plaintiff listed bipolar

22   disorder and high blood pressure as the conditions that limit her ability to work.  *Id.*  Plaintiff

23   further stated that she is unable to see out of her right eye and that she is "sad all the time, angry,

24   tired, I can't think right, I can't sleep."  *Id.* at 250.  She explained in her application that her

25   ───────────────────

26   [1] The acting Commissioner of the Social Security Administration is Dr. Kilolo Kijakazi.  She is
     substituted for her predecessor, Andrew Saul, as Defendant in this action pursuant to Fed. R. Civ.
27   P. 25(d).
     [2] Due to its size, the Administrative Record, filed at Dkt. No. 17, is broken into ten parts.  The
28   Court refers to these documents as "AR," and cites to its internal pagination unless otherwise
     specified.

United States District Court
Northern District of California

1    conditions affect her memory, her ability to walk, see, concentrate, understand, and get along with

2    others. *Id.* at 255. Based on this application, the agency denied Plaintiff's claim initially in

3    September 2017, and later upon reconsideration in November 2017. *Id.* at 112–16, 120–25.

4    Plaintiff then appeared before an Administrative Law Judge ("ALJ") in June 2019. *Id.* at 37–78.

5         In its decision, the ALJ followed the five-step sequential evaluation process mandated for

6    disability claims under 20 C.F.R. § 416.920, and ultimately found that Plaintiff is not disabled.

7    *See* AR at 15–32. The ALJ accordingly denied Plaintiff's request for SSI. *Id.*

8         Step One requires the ALJ to determine whether the claimant is working in "substantial

9    gainful activity." *See* 20 C.F.R. § 416.920(b); *see also* 20 C.F.R. §§ 416.971 *et seq.* "Substantial

10   work activity" is defined as "work activity that involves doing significant physical or mental

11   activities." 20 C.F.R. § 416.972(a). And "gainful work activity," in turn, is defined as "work

12   activity that you do for pay or profit." *Id.* at § 416.972(b). At Step One, the ALJ found that

13   Plaintiff had worked after filing her SSI application. AR at 17. However, because she only earned

14   $7.00 in the third quarter of 2017, the ALJ found that this was insufficient to constitute substantial

15   gainful activity. *See id.*

16        Step Two directs the ALJ to determine whether the claimant has a severe impairment or

17   combination of impairments that significantly limit her ability to work. *See* 20 C.F.R.

18   § 416.920(c). Here, the ALJ found that Plaintiff satisfied this step because her bipolar disorder;

19   anxiety disorder; obesity; asthma; bilateral knee osteoarthritis; bilateral hip degeneration; and right

20   eye blindness constituted severe impairments that limited her ability to perform basic work

21   activities. AR at 18. The ALJ further found that Plaintiff had additional non-severe impairments,

22   including hypertension; post-traumatic stress disorder ("PTSD"); plantar fasciitis; migraines; and

23   hyperlipidemia. *Id.* However, as part of its analysis, the ALJ found that these non-severe

24   impairments did not have more than a minimal effect on Plaintiff's ability to perform basic work

25   activities. *Id.* The ALJ further explained that it had nonetheless accounted for these non-severe

26   impairments by limiting Plaintiff to less than a full range of light work, "with postural,

27   environmental, and mental limitations." *See id.*

28        At Step Three, the ALJ determines whether the claimant's impairment, or combination of

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P,

2   Appendix. 1.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d); *see also id.* at §§ 416.925, 416.926.  "That

3   bureaucratic mouthful means the ALJ must see if the claimant's impairment matches the criteria

4   for disabling conditions listed in the regulations."  *Petrini v. Colvin*, No. 14-CV-01583-JD, 2015

5   WL 5071931, at \*1 (N.D. Cal. Aug. 27, 2015), *aff'd sub nom. Petrini v. Berryhill*, 705 F. App'x

6   511 (9th Cir. 2017) (quotation omitted).

7          At this third step, the ALJ found against Plaintiff.  The ALJ considered several listings for

8   musculoskeletal impairments, respiratory disorders, and mental disorders.  *See* AR 18–21 (citing

9   Listings 1.02, 3.03, 12.04).  However, the ALJ concluded that Plaintiff did not meet or equal the

10  criteria for these listings.  As relevant to this order, the ALJ concluded that there was no evidence

11  in the objective medical record that Plaintiff could not ambulate effectively or perform fine and

12  gross movements.  *Id.* at 18.  The ALJ found that Plaintiff had moderate limitations due to her

13  mental impairments in (1) understanding, remembering, and applying information; (2) interacting

14  with others; and (3) concentrating, persisting, and maintaining pace.  *See id.* at 19–20.  However,

15  the ALJ found that Plaintiff had only a mild limitation in adapting or managing oneself.  *Id.*  The

16  ALJ relied on the function reports and hearing testimony in which Plaintiff reported:

17       • Preparing meals daily for herself; taking out the trash; and washing dishes and clothes.

18       • Cleaning the women's restroom when she lived in a shelter.

19       • Using public transportation and going out alone.

20       • Shopping for food and clothing once per month, for two to four hours at a time.

21       • Socializing with others in person or on the phone, one to two times per month.

22       • Paying bills and handling money, such as counting change and using a checkbook.

23       • Watching television, movies, and playing games on her phone daily.

24       • Attending counseling and doctor's appointments.

25       • Traveling and visiting her children for a camping trip in Los Angeles.

26  *Id.*

27          The ALJ therefore proceeded to Step Four to determine Plaintiff's "residual functional

28  capacity" or "RFC," and her and ability to perform past relevant work.  *Id.* at 21–30 (citing 20

3

1    C.F.R. § 416.920(a)(4)(iv), (e)).  To determine Plaintiff's RFC, the ALJ must first consider

2    whether there is an underlying medically determinable physical or mental impairment that could

3    reasonably be expected to produce Plaintiff's pain or other symptoms.  *See* 20 C.F.R. § 416.929;

4    *see also* Social Security Ruling ("SSR") 16-3p.  The ALJ must consider all impairments, even

5    those that are not severe.  *See id.*; *see also* 20 C.F.R. § 416.945.  Once the underlying impairment

6    has been shown, the ALJ must then evaluate the intensity, persistence and limiting effects of

7    claimant's symptoms.  *See* 20 C.F.R. § 416.929.

8          Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

9    be expected to cause her alleged symptoms, but noted that "the claimant's statements concerning

10   the intensity, persistence and limiting effects of these symptoms are not entirely consistent with

11   the medical evidence and other evidence in the record."  AR at 23, 30.  The ALJ considered the

12   prior medical records and Plaintiff's own testimony.  *Id.* at 21–30.  Based on this evidence, the

13   ALJ found that Plaintiff had the RFD to perform "less than a full range of light work" as defined

14   in 20 CFR § 416.967(b), with limitations to account for her "bipolar disorder; obesity; asthma;

15   bilateral knee osteoarthritis; bilateral hip degeneration; and right eye blindness."[3]  *See* AR at 27.

16   Specifically, the ALJ found that Plaintiff can only occasionally climb ladders, ropes, or scaffolds,

17   and she must avoid working at unprotected heights, and near moving machinery."  *See id.* at 22;

18   *see also* 20 C.F.R. § 416.967(b) (defining "light work").  The ALJ further explained that the

19   objective medical evidence indicates that Plaintiff should be "limited to simple, routine and

20   repetitive tasks; no fast paced assembly line work; few changes in the work setting; occasional

21   interaction with the supervisors and co-workers; and brief superficial interaction with the public."

22   *See* AR at 29.

23          Lastly, at Step Five, the ALJ found that Plaintiff was capable of performing other work in

24

25   [3] " Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
     of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in
26   this category when it requires a good deal of walking or standing, or when it involves sitting most
     of the time with some pushing and pulling of arm or leg controls.  To be considered capable of
27   performing a full or wide range of light work, you must have the ability to do substantially all of
     these activities.  If someone can do light work, we determine that he or she can also do sedentary
28   work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
     long periods of time."  20 C.F.R. § 416.967(b).

United States District Court
Northern District of California

1    the national economy, including as a photocopy machine operator; marker or labeler; and routing

2    clerk. AR at 30–31. The ALJ thus concluded that Plaintiff is not disabled under the Act. *See id.*

3    at 31.

4           Plaintiff requested review of the ALJ's decision with the Appeals Council and the request

5    was denied in May 2020, making the ALJ's decision a final decision. *See id.* at 1–3. Plaintiff then

6    filed this action pursuant to 42 U.S.C. § 405(g).

7    **II.    STANDARD OF REVIEW**

8           The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C.

9    § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the

10   record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

11   Security, with or without remanding the cause for a rehearing."). The Court may disturb the

12   Commissioner's decision to deny benefits only if the decision is not supported by substantial

13   evidence, or is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

14   "Substantial evidence means such relevant evidence as a reasonable mind might accept as

15   adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be

16   less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation

17   omitted). "Where the evidence is susceptible to more than one rational interpretation, one of

18   which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*,

19   278 F.3d 947, 954 (9th Cir. 2002).

20          The Court must consider the administrative record as a whole, weighing both the evidence

21   that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*,

22   888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of

23   credibility and for resolving evidentiary ambiguities, including conflicting medical testimony.

24   *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not

25   reverse an ALJ's decision on account of an error that is harmless. The burden of showing that an

26   error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674

27   F.3d at 1111 (quotations omitted).

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    DISCUSSION**

The Court finds that Plaintiff has not established any reason to set aside the ALJ's decision.  Plaintiff suggests that the ALJ downplayed or ignored the full extent of her conditions— particularly regarding her PTSD and hand impairments.  *See generally* Dkt. No. 23.  Plaintiff further argues that to the extent the evidence about the scope and severity of her mental impairments was ambiguous, the ALJ failed to properly develop the record.  *Id.*

**A.    Step Two**

Plaintiff argues that the ALJ erred at Step Two by failing to consider her hand impairments and PTSD as severe impairments that significantly limit her ability to work.  *See* Dkt. No. 23 at 4– 5.  "Step two is . . . a threshold determination meant to screen out weak claims."  *See Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).  In general, the Plaintiff bears the burden of providing reliable evidence to establish the existence of medically determinable impairments.  *See* 20 C.F.R. § 404.1512(a).  Plaintiff also bears the burden of showing that her impairment is severe, meaning that the symptoms affect her ability to "perform basic work activities."  *See Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001).  "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions;  (4) Use  of  judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*See* 20 C.F.R. §§ 404.1522, 416.922.

As an initial matter, Plaintiff has not explained how the ALJ's alleged error at Step Two was harmful.  As Plaintiff acknowledges, the inquiry at Step Two "is 'a de minimis screening device [used] to dispose of groundless claims.'"  *See* Dkt. No. 23 at 4 (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)).  But here, the ALJ found in Plaintiff's favor, concluding that she did have a medically severe impairment or combination of impairments and continued to Step Three.  The Ninth Circuit has held that where Step Two is decided in a plaintiff's favor, she "could

1    not possibly have been prejudiced" and "[a]ny alleged error is therefore harmless . . . ." *See Buck*

2    *v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

3            In any event, to the extent Plaintiff suggests that the alleged error may have informed other

4    steps of the analysis, the Court considers Plaintiff's arguments regarding her hand impairments

5    and PTSD. *See* Dkt. No. 28 at 4. The Court finds that substantial evidence supports the ALJ's

6    findings that Plaintiff has no medically determinable impairment affecting her hands, and that her

7    PTSD was a non-severe impairment. *See* AR at 18.

8                        **1.        Hand Impairments**

9            Plaintiff first contends that the ALJ incorrectly assessed the existence and severity of

10   Plaintiff's hand impairments. *See* Dkt. No. 23 at 5–6. Plaintiff points out that as part of the

11   consultative examination in August 2017, Plaintiff's grip strength was measured as 18/13/14

12   pounds in her right hand and 10/13/13 pounds in her left hand. *See id.* at 5 (citing AR at 483).

13   Plaintiff argues that this is significantly below the average grip strength for a woman of Plaintiff's

14   age. *Id.* Plaintiff cites a single online article from livestrong.com, which lists the average grip

15   strength for women aged 50 to 54 as "Right 53.9–77.4; Left 46.6–68" pounds. *Id.* Plaintiff also

16   points out that the consultative examiner noted decreased sensation in Plaintiff's hands and feet.

17   *See* AR at 484. During the hearing, Plaintiff testified that her hands are numb and hurt in the

18   mornings when she first wakes up, and she has to open and close them "so they don't start

19   popping and locking up." *See* AR at 55. Based on this evidence, Plaintiff appears to argue that

20   the ALJ did not properly consider these limitations because jobs like photocopy machine operator

21   and labeler require frequent handling, fingering, and feeling. *See* Dkt. No. 23 at 5–6.

22           In support of her argument, Plaintiff cites only pieces of the consultative examination,

23   ignoring the entirety of the administrative record and the consultative examiner's actual findings.

24   Despite the low grip strength and Plaintiff's reported numbness and tingling, the examiner found:

25   "There is no atrophy. Tinel's test and Phalen's test are negative. The claimant is able to make a

26   fist. There is no significant deformity, and no evidence of Heberden's nodes noted." *See* AR at

27   484. The examiner noted that the diminished sensation to light touch that Plaintiff experienced in

28   her hands and feet was likely the "beginning signs of peripheral neuropathy." *Id.* at 484–85. But

1    the examiner concluded that "the condition is mild and has not resulted in atrophy." *Id.* at 485.

2    The examiner further rated Plaintiff's motor strength as "5/5," and did not identify any postural or

3    manipulative limitations as a result. *Id.* at 484–85.  The ALJ considered the totality of this

4    evidence, and concluded that Plaintiff's claims of hand pain and her low grip strength were not

5    medically determinable. *See id.* at 18–19; *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th

6    Cir. 2005) ("[R]egardless of how many symptoms an individual alleges, or how genuine the

7    individual's complaints may appear to be, the existence of a medically determinable physical or

8    mental impairment cannot be established in the absence of objective medical abnormalities; i.e.,

9    medical signs and laboratory findings . . . .") (quotation omitted).

10          Plaintiff also fails to explain how her decreased grip strength and numbness would

11    interfere with her ability to perform basic work functions.  She obliquely suggests that the

12    examiner's findings of decreased grip strength and numbness "need to be considered over the

13    course of a full-time competitive work day/work week." *See* Dkt. No. 23 at 5.  But Plaintiff offers

14    no explanation—or evidence in the record—of how these symptoms would negatively affect her

15    ability to perform during a work day or work week.  In its analysis, the ALJ considered Plaintiff's

16    reported daily activities, such as cooking meals daily, taking out the trash, doing the laundry, and

17    washing dishes. *See* AR at 19–20, 27–28; *see also id.* at 250–56.  Plaintiff also acknowledged that

18    she played games on her cell phone daily, which would require dexterity in her hands. *Id.* at 254,

19    264.  All of these activities belie Plaintiff's unsupported suggestion that her grip strength and

20    numbness to light touch significantly limit her ability to work.  In short, there is substantial

21    evidence to support the ALJ's findings regarding Plaintiff's hand impairments.

22                    **2.      PTSD**

23          Plaintiff next suggests that the ALJ improperly minimized her PTSD because in its

24    analysis, the ALJ stated that "post-traumatic stress disorder was barely mentioned in the

25    evidence." *See* Dkt. No. 23 at 5 (citing AR at 18).  Plaintiff argues that this is inaccurate, and

26    highlights several places in the administrative record that mention a PTSD diagnosis in 2017 and

27    2018. *See id.* at 4–5.  Plaintiff further argues that these records reference symptoms that are

28    consistent with PTSD, such as Plaintiff's desire to be alone, lack of sleep, and irritability. *See id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1          But despite Plaintiff's suggestion to the contrary, the ALJ did consider Plaintiff's PTSD as

2   well as these symptoms. *See* AR at 18, 24–28. The ALJ nevertheless found that Plaintiff's PTSD

3   was a non-severe impairment, and did not have more than a minimal effect on her ability to

4   perform basic work functions. *See id.* at 18. There is substantial evidence to support this

5   conclusion. For example, although some of Plaintiff's medical records identify a PTSD diagnosis

6   beginning in late 2017, *see, e.g.*, *id.* at 546, Plaintiff also had normal mental status examinations

7   on multiple occasions from 2017 to 2019. The ALJ even explicitly referenced and relied on these

8   normal mental status examinations in June 2017, July 2017, October 2017, March 2018, April

9   2018, June 2018, October 2018, November 2018, and February 2019. *See id.* at 24–28; *see also*

10   *id.* at 325, 332, 579, 538–39, 588, 591, 604, 620, 649, 661. During these visits, Plaintiff was alert,

11   cooperative, had good eye contact, good judgment and insight, a full range of mood and affect,

12   and her thought process was logical and goal directed. *See id.* She was also often noted to be

13   appropriate and polite. *See, e.g.*, *id.* at 588.

14          The records also indicate that on several occasions Plaintiff's symptoms were improved—

15   and Plaintiff noticed the improvement—when she was taking her medication. *See, e.g.*, *id.* at 431,

16   536, 553, 640, 649, 714, 705, 707. In November and December 2017, for example, Plaintiff

17   reported feeling "good," "happy and hopeful," "calmer," and having "decreased irritability." *Id.* at

18   705, 714. Although Plaintiff at times indicated that she was irritable and did not like to be around

19   people, she also reported having a few friends, spending time with family for holidays, and

20   visiting and wanting to spend more time with her children. *See id.* at 553, 619, 655, 702, 712.

21   The ALJ also pointed to Plaintiff's reported activities—such as shopping in stores and taking

22   public transportation—which require interacting with other people. *See id.* at 252–53.

23          Plaintiff appears to suggest that the ALJ conflated her symptoms of bipolar disorder with

24   her PTSD. *See* Dkt. No. 28 at 3–4. But even if true, there is considerable overlap in the

25   symptoms Plaintiff has identified as associated with her PTSD and those associated with her

26   bipolar disorder in the medical records. Plaintiff notes that because of her PTSD she (1) isolates

27   and does not want to be around people; (2) suffers from disrupted or limited sleep at times; (3) and

28   experiences feelings of sadness and anxiety. *See* Dkt. No. 23 at 4; Dkt. No. 28 at 4. The medical

1    records attribute similar symptoms to her bipolar disorder, including "agitation," "depressed

2    mood," "sleep disturbance," and "explosive anger." *See, e.g.*, AR at 431.

3          Moreover, the ALJ accounted for these symptoms when determining Plaintiff's RFC at

4    Step Four, and limiting Plaintiff to less than a full range of work. *See id.* at 18, 21–30.  The ALJ

5    found that Plaintiff could perform "simple, routine and repetitive tasks," but not "fast paced

6    assembly line work; requires "few changes in the work setting"; and should have only "occasional

7    interaction with supervisors and co-workers" and "brief superficial interaction with the public."

8    *See id.* at 21, 29.  To the extent that Plaintiff simply disagrees with the manner in which the ALJ

9    weighed the evidence, the Court's role on appeal is not to determine whether it would decide the

10   case differently in the first instance.  Rather, the question before the Court is whether there is

11   substantial evidence to support the ALJ's findings.  As explained above, the Court finds that there

12   is.

13                    **3.      Duty to Develop the Record**

14         Plaintiff alternatively argues that the ALJ failed to develop the record and should have

15   ordered a consultative mental examination. *See* Dkt. No. 23 at 6–8.  Plaintiff appears to suggest

16   that the medical evidence was ambiguous, and there may have been limitations in the records

17   about her overall mental health impairments. *See id.* at 6.

18         The claimant bears the burden of establishing disability. *See Webb*, 433 F.3d at 687.

19   Nevertheless, "[t]he ALJ is not a mere umpire at such a proceeding," and it must therefore

20   "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."

21   *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (quotation omitted).  The ALJ

22   thus has a concurrent "duty to fully and fairly develop the record and to assure that the claimant's

23   interests are considered." *Webb*, 433 F.3d at 687 (quotation omitted).  This duty to supplement the

24   record "is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or

25   the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *See id.*

26         Here, Plaintiff makes little effort to explain how the evidence was ambiguous.  She points

27   out that over the years she saw many different providers, and experienced difficulty trusting new

28   people. *Id.* at 7.  In reply, she also notes that she was indigent and had unstable housing during the

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    relevant timeframe.  *See* Dkt. No. 28 at 2–3.  The Court appreciates the challenges Plaintiff may

2    have faced.  But Plaintiff does not point to any specific omissions or places in the record that

3    render the evidence ambiguous as a result of these difficulties.  Although Plaintiff saw different

4    individual providers through the years, the record also indicates that she consistently received care

5    from Ritter Health Center.  The record includes medical evidence and progress notes—including

6    mental health records—for almost every month spanning from June 2017 to April 2019.  These

7    records detail Plaintiff's symptoms, diagnoses, and treatment over time.  As the Ninth Circuit has

8    explained, further record development "is not required when, despite some inadequacies, a

9    relatively complete medical chronology of the claimant's condition during the relevant time period

10   is available."  *See Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017) (quotation omitted).

11        Plaintiff's suggestion that a consultative mental examination may have provided further

12   insight into Plaintiff's mental health is not enough, on its own, to establish that the evidence

13   before the ALJ was ambiguous.  The Court accordingly finds that the evidence here was not

14   ambiguous, and the ALJ was not required to order a separate, consultative mental examination.

15   There was sufficient evidence for the ALJ to assess Plaintiff's mental residual functional capacity,

16   and make its decision about Plaintiff's ability to meet the demands of a job given her mental

17   impairments.

18        **B.**     **Step Four**

19        Plaintiff next argues that the ALJ's RFC determination at Step Four was not based on the

20   overall evidence in the record.  *See* Dkt. No. 23 at 8–12.  Plaintiff urges that the ALJ failed to

21   adequately consider Plaintiff's (1) hand-related impairments; (2) bilateral knee osteoarthritis and

22   bilateral hip degermation; (3) mental health limitations; and (4) visual limitations due to blindness

23   in her right eye.  *Id.*  The Court disagrees.

24        To the extent Plaintiff simply repeats her arguments about her hand-related impairments

25   and PTSD, the Court again rejects them for the reasons already stated.  As to her additional

26   arguments, Plaintiff suggests that the ALJ should have found standing and walking limitations

27   based on her "bilateral knee osteoarthritis and bilateral hip degeneration."  *See* Dkt. No. 23 at 9.

28   But Plaintiff does not point to any medical evidence to establish these limitations.  Nor does she

11

1   suggest what she believes these limitations should be.  Rather, Plaintiff seems to suggest that the

2   ALJ relied too heavily on Plaintiff's report that she went on a camping trip with her family and

3   danced a lot in June 2018.  *See id.* (citing AR at 26).  Plaintiff points out that she was ambulatory

4   but with an "antalgic gait" and had some swelling in her knees when she returned.  *Id.*

5          However, the medical records also indicate that Plaintiff saw positive effects from using

6   ice and resting afterward, and she was only prescribed Ibuprofen as a result.  *See* AR at 619–20.  A

7   week later when she returned, she had an "even gait" and normal range of motion.  *See id.* at 617.

8   This is also not the only evidence on which the ALJ relied.  *See* Section I above.  The ALJ

9   detailed Plaintiff's medical records, and also considered Plaintiff's other activities.  *See id.* at 21–

10  30.  At Step Four, the ALJ may consider any of the claimant's daily activities that "may be seen as

11  inconsistent with the presence of a condition which would preclude all work activity."  *See Curry*

12  *v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of benefits where claimant

13  could "take care of her personal needs, prepare easy meals, do light housework, and shop for some

14  groceries"); *see also Burch*, 400 F.3d at 681 (upholding denial of benefits based, in part, on

15  claimant's "daily activities involving skills that could be transferred to the workplace").  The ALJ

16  noted, for example, that Plaintiff could shop, take public transportation, travel, go camping, and

17  attend counseling and doctor's appointments.  *See* AR at 28.

18         Similarly, Plaintiff argues that the ALJ failed to consider limitations due to her right eye

19  blindness.  *See* Dkt. No. 23 at 11.  But again, Plaintiff does not identify what limitations she

20  believes the ALJ failed to account for based on this impairment.  Nor does she point to any

21  medical evidence to support limitations based on her right eye.  The ALJ noted that Plaintiff's

22  testimony that her vision in her left eye gets blurry at times is not supported in the medical

23  records.  The ALJ also considered that Plaintiff did not require any visual assistance when out in

24  public, and she reported playing games on her phone and watching television daily.  AR at 28.

25  Plaintiff's vague suggestion that the ALJ did not properly account for her right eye blindness is

26  simply not sufficient.  In sum, the Court finds that there was substantial evidence to support the

27  ALJ's conclusion that Plaintiff was capable of performing less than a full range of light work.

28  //

United States District Court
Northern District of California

12

United States District Court
Northern District of California

### C.      Step Five

Finally, Plaintiff argues that the vocational expert's testimony was of no evidentiary value because it did not reflect all of Plaintiff's limitations.  *See* Dkt. No. 23 at 12.  But as already discussed, there is substantial evidence to support the ALJ's finding regarding what limitations were credible and supported by the record.  The hypothetical questions the ALJ posed to the vocational expert, therefore, were proper because they included all the limitations that the ALJ found credible and supported by substantial evidence.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## IV.     CONCLUSION

In summary, the Court finds that there is sufficient evidence to support the ALJ's determination.  The Court therefore **DENIES** Plaintiff's Motion for Summary Judgment, Dkt. No. 23, and **GRANTS** Defendant's Motion for Summary Judgment, Dkt. No. 27.  The ALJ's decision is affirmed.  The Clerk is directed to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated:  5/20/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

13